**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

JOSÉ ENRIQUE ALVARADO-SOLIVAN,

Plaintiff,

v.

COMISIÓN ESTATAL DE ELECCIONES,
LIZA GARCÍA-VÉLEZ, and;
COMMONWEALTH OF PUERTO RICO;
et al.,

Defendants.

CIVIL NO. 16-1458 (GAG)

**MEMORANDUM ORDER**

Presently before the Court is José Enrique Alvarado-Solivan's ("Plaintiff") motion "requesting order to draw negative inference against defendants" Liza García-Vélez ("García-Vélez"), the Comisión Estatal de Elecciones ("CEE"), and the Commonwealth of Puerto Rico ("Puerto Rico") (jointly "Defendants") from CEE's former president García-Vélez's invocation of her 5th amendment right against self-incrimination during her deposition in response to probative questions relating to the delegation of official duties and functions assigned between Plaintiff, the former Press Director of CEE's Department of Communications, and Helga García-Pérez ("García-Pérez"), president of Perfect Partners, Inc., a public relations consulting company. (Docket No. 90). Defendants opposed. (Docket No. 94). For the ensuing reasons, the Court **GRANTS** Plaintiff's motion at Docket No. 90 allowing a negative inference to be made at trial from García-Velez's invocation of her 5th amendment right against self-incrimination. Moreover, the Court notes that allowing an adverse inference to be presented to the jury does not mean that Defendants are otherwise foreclosed from providing a non-pretextual, non-discriminatory justification for terminating Plaintiff.

**Civil No. 16-1458 (GAG)**

It is a settled principle that defendants and witnesses alike can invoke the 5th amendment in civil cases when disclosure could be incriminating. <u>Lefkowitz v. Turley</u>, 414 U.S. 70, 77 (1973); <u>McCarthy v. Arndstein</u>, 266 U.S. 34, 40 (1924). Invocations of the 5th amendment are not costless, often disadvantaging the opposing party by preventing the disclosure of certain evidence and thus frustrating the search for truth. <u>Serafino v. Hasbro, Inc</u>., 82 F.3d 515, 518 (1st Cir. 1996) (citing <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318 (1976)). Adverse inferences are an appropriate remedy in such instances. <u>Toledo-Colon v. Puerto Rico</u>, 937 F. Supp. 2d 211, 217 (D.P.R. 2013); <u>SEC v. Ramírez</u>, Civil No. 15-2365 (PAD), 2018 WL 2021464, at *5 (D.P.R. Apr. 30, 2018).

To determine whether an adverse inference is appropriate, courts first must ascertain whether the invocation of the 5th amendment was justified. <u>U.S. v. Ramos</u>, 763 F.3d 45, 55 (1st Cir. 2014). An invocation is justified if made in response to specific questions, rather than in a blanket manner, and if the witness faces a "substantial and real," rather than "trifling or imaginary," possibility of incrimination. <u>Id.</u> (citing <u>Marchetti v. United States</u>, 390 U.S. 39, 53 (1968)). It is for the Court to decide whether the witness faces a threat of incrimination sufficient to allow for invocation of the 5th amendment. <u>Ramos</u>, 763 F.3d at 55 (citing <u>United States v. Pratt</u>, 913 F.2d 982, 990 (1st Cir. 1990)).

Second, reflecting a preference for case-by-case analyses, <u>see e.g.</u>, <u>LiButti v. United States</u>, 107 F.3d 110, 122 (2nd Cir. 1997), courts apply a non-exclusive four factor test to determine if an adverse inference against the invoking party would "advance the search for truth." <u>LiButti</u>, 107 F.3d at 124. Courts examine: (1) the nature of the relevant relationship between the relevant parties; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the non-party witness and the party in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. <u>Banks v. Yokemick</u>, 144 F. Supp. 2d 272, 289 (S.D.N.Y. 2001) (citing

LiButti, 107 F.3d 110 at 122). Whenever the LiButti test is applied, the first factor is invariably the most important. 107 F.3d at 123.

García-Vélez's invocation of the 5th amendment is proper. García-Vélez is the subject of an ongoing criminal investigation by a Special Prosecutor with respect to her alleged hiring of Perfect Partners as a media relations consultant. (Docket No. 94 at 5) As such, García-Vélez's answers to questions during her April 5, 2021, deposition about the delegation of duties to García-Pérez could be used against her in the ongoing criminal investigation. (Docket No. 90-3 at 9-58).

Application of the four-factor test from LiButti strongly counsels in favor of the appropriateness of an adverse inference. "The closer the bond [between the non-party witness and the party] . . . . the less likely the non-party witness would be to render testimony in order to damage the relationship." LiButti, 107 F.3d at 123. While García-Vélez is a non-party witness with respect to the claims under Title VII and Law No. 80, P.R. LAWS ANN. tit. 29, § 185(a) (indemnification for dismissal without just cause), García-Vélez is a defendant with respect to the claims made under Law No. 100, P.R. LAWS ANN. tit. 29, § 146 (discrimination based on sex, pregnancy, maternity, and religion) and Law No. 69, P.R. LAWS ANN. tit. 29, § 1323 (gender-based discrimination).[1]

García-Vélez has a close relationship with the Defendants because she served as president of the CEE during the alleged discriminatory incident(s) and was responsible for the allegedly discriminatory actions giving rise to this action. Since García-Vélez was the president of the CEE during the alleged discriminatory period, the Defendants had vested a significant degree of control in

---

[1] The Title VII claims against García-Vélez have been dismissed because Title VII does not allow for personal liability. (Doc. Nos. 23, 33). The Court held that Law No. 80 does not apply to supervisors such as García-Vélez. Flamand v. American Int'l Group, 876 F.Supp. 356, 364 (D.P.R. 1994). However, the Supreme Court of Puerto Rico has held that supervisors can be held personally liable under Law Nos. 100 and 69. Rosario Toledo v. Distribuidora Kikuet, P.R. Offic. Trans., 151 P.R. Dec. 634, 2000 WL 943550, at *15-16 (P.R. June 29, 2000).

García-Vélez "in regard to the key facts and general subject matter of [this] litigation." LiButti, 107 F.3d at 123. Both as acting as well as confirmed president of the CEE, García-Vélez had exclusive control vested in her over the party-Defendants with respect to the allegedly discriminatory actions that gave rise to this action. García-Vélez and the Defendants have identical interests in the outcome of this litigation: dismissal of the charges pending against them.

Given the commonality of defenses to both the Puerto Rico and federal claims, it is infeasible that García-Vélez would purposefully jeopardize an otherwise valid defense without good cause. García-Vélez and the party-Defendants have nearly identical roles in this litigation. The only difference is that Title VII allows personal liability while Law No. 80 does not. Both García-Vélez and the CEE deny being liable by arguing that García-Vélez did not discriminate against Plaintiff on the basis of gender.

García-Vélez's invocation of the 5th amendment, in an attempt to avoid self-incrimination, was proper because of the related ongoing criminal investigation. In sum, an adverse inference against Defendants is proper because: (1) García-Vélez and Defendants have identical interests in the outcome of the litigation, (2) García-Vélez was the president of the CEE as the facts of the case unfolded, and (3) García-Vélez is still a defendant with respect to the claims made under P.R. Laws Ann. tit. 29, §§ 146, 1321. An adverse inference is warranted because it will balance Plaintiff's interest in arguing his case with García-Vélez's interest in avoiding self-incrimination and will otherwise aid the jury.

**SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of July 2021.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge