UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ ENRIQUE ALVARADO-SOLIVAN<br>**Plaintiff,**<br><br>v.<br><br>COMISIÓN ESTATAL DE ELECCIONES,<br>LIZA M. GARCIA-VELEZ,<br>COMMONWEALTH OF PUERTO RICO,<br>INSURANCE COMPANY XYZ,<br>COMPANY ABC and JOHN & JANE DOE,<br><br>**Defendants.** | CIVIL ACTION<br>NO. 16-01458-TSH |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
July 25, 2024

**HILLMAN, S.D.J.**

### Introduction

Plaintiff José Enrique Alvarado-Solivan ("Alvarado-Solivan" or "Plaintiff") has filed this case against Comisión Estatal De Elecciones (the State Elections Commission of Puerto Rico or SEC), the President of the SEC in her official capacity,[1] and the Commonwealth of Puerto Rico (collectively, "Defendants"), alleging discrimination on the basis of sex pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2(a)) and several Puerto Rico statutes on employment discrimination, wrongful termination and negligence. Defendants now move for summary judgment on all counts. For the following reasons, the motion for summary judgment is **granted**.

---

[1] The original Complaint named Liza M. Garcia-Velez in this capacity. The position of President was held by Francisco Rosado Colomer at the time this motion was filed.

**Factual Background**

Plaintiff worked for Defendant the State Elections Commission of Puerto Rico (SEC) from November 7, 1991, until his termination on May 18, 2015. The State Elections Commission is a public agency in Puerto Rico, whose duty is to guarantee the right of all voters in electoral events in Puerto Rico. Plaintiff was originally hired by Mr. Juan R. Melecio, who was President of the SEC for the Press and Public Relations Office.[2] Eventually he was promoted to Director of Press and Public Relations. Plaintiff was initially employed by the SEC through a professional services contract, then in May 1996 he was formally appointed as Communications Director for the agency, a "trust" position at the SEC's personnel system. P.R. Laws Ann. tit. 3, § 1350.[3]

Plaintiff eventually became Director of that Department and kept that post under several presidents. In 2015 Defendant Liza M. García-Vélez became interim President of the SEC, and later actual President. Prior to her official designation as President, García-Vélez had started stripping Plaintiff of some of his duties, cutting off access and communication channels between them, and illegally hiring an outside contractor to perform some of his duties, which included drafting press releases and planning agency events.

Beyond the formal regulatory designation of the position, Plaintiff's duties were the kind which actually brought him to close proximity to García-Vélez, and which made it nearly impossible for him to carry out those duties without having earned her trust. Plaintiff implemented short- and long-term programs and projects for the agency; he coordinated special events and services for the press, radio, television, advertising and public relations for the agency

---

[2] The Department of Press and Public Relations was renamed as the Department of Communications.
[3] Puerto Rico government positions are classified as either "career" or "trust" positions. *Costa–Urena v. Segarra*, 590 F.3d 18, 22 (1st Cir.2009). "Trust" employees participate in policymaking and are "freely subject to removal from [their position[s]] ..." on political grounds. *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 26–27 (1st Cir.2008); *see also Costa–Urena,* 590 F.3d at 22. "Career" employees can only be selected and terminated based on merit, not politics, and terminated for just cause. *Costa–Urena*, 590 F.3d at 22.

2

and its President; he promoted and ensured the most effective relations between the agency and the press; he had to develop for the agency and the President effective channels of communication with the press and the public. The press office he headed also served as a link with other government agencies, the legislature and as a host for international guests visiting Puerto Rico during electoral events, and in those activities, the SEC's press office would hold visits and meetings "on behalf of the president", and he answered directly to her.

## Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential32 of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (*quoting Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

In evaluating a motion for summary judgment, the Court must view the entire record "in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a

judge. *See Anderson*, 477 U.S. at 255; *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 99 (1st Cir. 2014) (citations omitted).

## Discussion

Under Title VII, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.... 42 U.S.C. § 2000e–2(a)(1). The core inquiry is whether the defendant-employer intentionally discriminated against the plaintiff because of gender. *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 153 (1st Cir.1990). Because Plaintiff has not presented direct evidence of intentional discrimination, the *McDonnell Douglas* framework governs his claim. *Lockridge v. The Univ. Of Me. Sys.*, 597 F.3d 464, 470 (1st Cir. 2010). Under this burden-shifting framework, a plaintiff-employee must first establish a *prima facie* case of gender discrimination. *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). Then, "the burden of production—but not the burden of persuasion—shifts to the [defendant-]employer, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Lockridge*, 597 F.3d at 470 (citation omitted). If the defendant-employer provides a legitimate reason for its adverse action, the burden shifts back to the plaintiff-employee, who must then show that the defendant-employer's stated reason is pretextual and that the actual reason for the adverse action is discriminatory. *Id.*

With respect to Title VII retaliation claims, a burden of production then falls upon the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that sex was a motivating factor in the challenged employment action. *Santiago–Ramos v. Centennial*

*P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir.2000) (citing Hicks, 509 U.S. at 506–07). "At the third stage, with the initial presumption of discrimination removed, it falls upon the employee to 'present sufficient evidence to show both that the employer's articulated reason ... is a pretext and that the true reason is discriminatory.' " *Id*. (*citing Thomas v. Eastman Kodak Co*., 183 F.3d 38, 56 (1st Cir.1999), cert. denied, 528 U.S. 1161 (2000)).

In this case, the Court finds it proper, for purposes of efficiency, to set "aside the question whether [Plaintiff] established a prima facie case" and turn instead to the ultimate issue in this case: whether the evidence, taken in the light most favorable to the nonmovant, is sufficient to establish pretext and discriminatory animus. *Hillstrom v. Best W. TLC Hotel*, 354 F.3d 27, 31 (1st Cir. 2003); *see Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535-36 (1st Cir. 1996) (noting that, in the summary judgment context, "the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting [*McDonnell Douglas*] framework."), Musa-Vega v. Rosario Melendez, 2010 WL 5110120, at *1 (D.P.R. 2010).

The First Circuit has endorsed several methods for analyzing pretext. Plaintiff may demonstrate, for instance, that he was "treated differently than other similarly situated employees." *Kosereis*, 331 F.3d at 214 (citations omitted). He could also show "that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." *Santiago-Ramos*, 217 F.3d at 55 (citation omitted). Yet another method is to highlight "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (citation omitted).

Here, Defendants argue that the decision to dismiss plaintiff from employment was due to the fact that the position that he held was a confidential, policymaking position, subject to

5

selection and removal at will. (Docket No. 106, p. 23.) Plaintiff disagrees and argues that Defendant's alleged nondiscriminatory reason is a pretext for discrimination.

The Commissioner does not contest whether plaintiff can establish a prima facie case of retaliation regarding the allegations related to Case Nos. 00–0489, 09–0500, or 11–0675. Thus, the analysis as to these claims will focus on whether plaintiff has met his burden of showing that the Commissioner's proffered reasons for not choosing plaintiff for the positions in question are pretext for retaliatory animus. *See Zapata v. Univision Puerto Rico, Inc.*, 914 F.Supp.2d 156, 171 (D.P.R.2011) (*citing Gómez–González v. Rural Opportunities, Inc*., 626 F.3d 654, 662 (1st Cir.2010)) (At summary judgment, particularly in cases where the parties' focus is on whether the employer's grounds for its actions are pretextual, 'a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.').

The First Circuit Court of Appeals has held that "in Puerto Rico, state employees fall generally into two categories: those who hold 'career' positions and those who hold 'trust' or 'confidence' positions. Trust employees are involved in "policy making" or render direct services to particular government figures." Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir. 2009) These employees are generally of free selection and removal. Id. The Court's analysis turns on the "[a]ctual functions of the job, not titles" and the "official description of job functions is a presumptively reliable basis for determining those functions." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 (1st Cir. 2010) (internal citations omitted); see also Galloza, 389 F.3d at 31 ("[A] perusal of the job description for the position is the most useful starting point for determining the position's inherent attributes."). Lopez Collazo v. Ruiz-Feliciano, No. CV 21-1553 (DRD), 2023 WL 5672736, at *5 (D.P.R. Sept. 1, 2023)

6

Under Puerto Rico law, "public employees are categorized into either career or trust/confidential positions." *Ruiz-Casillas v. Camacho-Morales*, 415 F.3d 127, 134 (1st Cir. 2005). "Unlike career employees, who are removable only for cause, [generally,] trust employees are of 'free selection and removal' ... [they] 'do not have a constitutionally protected property interest in that position.' " *Id*. (quoting *Galloza v. Foy*, 389 F.3d 26, 34 (1st Cir. 2004)); *see also Ruiz-Roche v. Lausell*, 848 F.2d 5, 7 (1st Cir. 1988); P.R. Laws Ann. tit. 3, § 1465. *Blanco-Torres v. Fuentes-Maldonado*, No. CV 14-1622 (GAG), 2016 WL 5677756, at *4, n.2 (D.P.R. Sept. 29, 2016).

It the instant case, it is undisputed that Plaintiff was the director of communications for the State Elections Commission and that said position is considered to be a 'trust' position. As stated above, trust employees are generally of free selection and removal, meaning that, with limited exceptions which need not be catalogued here, they may be hired and fired at will." Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir. 2009). Plaintiff's asserts that the grounds of his termination was Defendants' intent to replace him with less qualified female employees, but this is not sufficient evidence of pretext and of discriminatory animus. While Plaintiff paints a picture of a less than harmonious relationship with Garcia-Velez, this is lacking in specifics and context to satisfy a finding of pretext. The evidence in the record, evaluated in the light most favorable to Plaintiff, simply cannot be considered as minimally sufficient evidence from which a jury could infer that the proffered reason for his firing was pretextual, and that the decision was made because of discriminatory animus. *See Acevedo–Parrilla*, 696 F.3d at 140 (emphasis in the original) (citing *Mesnick v. Gen. Elec. Co*., 950 F.2d 816, 825 (1st Cir. 1991)).

## **Conclusion**

For the aforementioned reasons, Defendant's Motion for Summary Judgment (Docket No. 109 is **granted**.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
UNITED STATES SENIOR DISTRICT JUDGE

SO ORDERED.